# CITY OF BLOOMINGTON
## v.
# LINUS GRAVES.

*Municipal Corporations—Excavation and Obstruction of Street—Penalty under Ordinance—Possession—Evidence.*

1. In a prosecution under an ordinance by a municipal corporation to recover a penalty for excavating and obstructing a street, wherein the plaintiff's claim rests solely upon the extent of actual possession shown, its proof of such possession of the strip of ground in question is not so convincing as to require the reversal of the judgment for the defendant.

2. In such cases title deeds. maps and plats are admissible in evidence to show the extent of the defendant's possession, but not to show the title which is not involved.

[Opinion filed May 25, 1888.]

City of Bloomington v. Graves.

Appeal from the County Court of McLean County; the Hon. C. D. Myers, Judge, presiding.

Mr. A. E. DeMange, for appellant.

If the city was in such possession of the street, no matter whether that part of it sought to be taken by appellee was legally a part of it or not, it was bound to keep the whole street clear of obstructions and in a safe condition for public travel, and would have been liable for all damages caused by the excavations or obstructions placed there by appellee. Dillon on Munic. Corp. (3d Ed.), Vol. 2, Sec. 1009, and cases cited.

Such a liability certainly implies the corresponding right to protect such possession with all the police power at its command.   City of Chicago v. Wright, 69 Ill. 322.

In addition to its police power it seems clear that its possessory rights must be equally as strong as those of a natural person, upon whom no public duty rests.   City of Chicago v. Wright, *supra*.

It also seems clear that when the burden of liability is imposed on municipal corporations for all damages caused by obstructions on ground in their possession used as public streets, that in prosecutions like this, for placing such obstructions thereon, such corporations should be protected by the same rules of evidence as pertain to actions of forcible entry between individuals.

In such cases the law is well established that the defendant can not interpose evidence of title in defense.   Dillon on Munic. Corp. (3d Ed.), Vol. 2, Sec. 639; McCartney v. McMullin, 38 Ill. 237; Smith v. Hoag, 45 Ill. 250; Thompson v. Sornberger, 59 Ill. 326; Doty v. Burdick, 83 Ill. 475.

Messrs. Fifer & Phillips and Mr. E. M. Prince, for appellee.

Title deeds may be read in evidence in actions of forcible entry and detainer for the purpose of showing the extent of possession; and proof of boundaries is competent for the same purpose.   Brooks v. Bruyn, 18 Ill. 539; Huftalin v. Misner, 70 Ill. 205; Pearson v. Herr, 53 Ill. 144.

If the city, instead of prosecuting Graves under its ordi-nances for a penalty, had brought its action of forcible entry and detainer for an invasion of its possession, which would, we concede, raise the same legal question, it would then be incum-bent on the city (it having no paper title covering the place) to show an actual possession of the place where Graves put the obstruction, and a mere constructive possession would not be sufficient. Thompson v. Sornberger, 59 Ill. 326; McCart-ney v. McMullen, 38 Ill. 237.

"If a party does not make the entry under a paper title, his possession is adverse only to the portion actually occupied. * * * But where a party enters under a conveyance of a single tract of land, his actual occupation of a part, with a claim of title to the whole, will inure as a possession of the entire tract. In such case the possession is regarded as co-extensive with the description in the deed." Turney v. Chamberlin, 15 Ill. 271; Dills v. Hubbard, 21 Ill. 328.

The same principle of law applies in determining what man-ner of possession will sustain an action of trespass, which this action against Graves virtually is. If one owns 160 acres of land in a body, holding a deed therefor, his actual possession of forty acres of the land under his deed, will, if the other three forties are unoccupied and vacant, draw to him the pos-session, in law, of the whole. Whitford v. Drexel, 118 Ill. 600.

But if the party has no deed to the 160 acres, then he could only sustain an action of trespass to the part of which he shows himself in actual possession. I. C. R. R. Co. v. I. & I. C. Ry. Co., 85 Ill. 211; C. & N. W. Ry. Co. v. Hoag, 90 Ill. 339.

PLEASANTS, J. Appellee had charge of the grounds of the cemetery association, which lie north of and adjoining Lincoln street in the city of Bloomington. Having dug a line of post holes and begun to erect a fence six or seven feet south of the old south fence which had been standing for about eighteen years, he was fined by the police magistrate, on a complaint under the ordinance, for excavating and obstructing "a public

City of Bloomington v. Graves.

street" of said city without permission.   On appeal to the County Court the verdict was for the defendant in each of two trials, on the last of which judgment was entered, and from that judgment this appeal is prosecuted.

Appellant relied wholly on alleged actual possession up to the old fence.   It claimed that these post holes were dug in a gutter cut by the city, in grading up the street, at a proper distance from the fence to admit of a sidewalk of the usual width between them, and that this strip was so used, though no artificial walk had been laid thereon.

Appellee claimed they were not in the gutter, but north of it, though very close, and that the gutter was the limit of the city's actual possession.

The proof of actual possession of this strip by the city, apart from the fact that people passed over it, is to our minds by no means convincing.   Several witnesses say, in general terms, it did some grading there for a sidewalk, but none of them identify the persons who did it, and the only work specified was a little filling at a low point where a box culvert crossed the street, which appellee and his hired man say they did, and with a view to making a fence.   One says it dug out some stumps, but on cross-examination admits he did not see it done, and does not know it was done under direction of the city.   Some of appellant's witnesses testified that nothing was done on it; that it was as nature left it.   Defendant testified that he had been in charge of the cemetery grounds ever since 1861, and had known Lincoln street from the time it was first laid out; that the first fence on the south side of the cemetery was built in 1831 or 1832; that it was a few feet south of the present fence at its west end; that its location was changed in 1869 under his direction, and that the city never did any work upon the strip in question.   That for many years persons and animals had passed over it as they had occasion, and so had made a narrow, crooked path thereon, was proved and admitted; but appellant made no claim of dedication or estoppel against the association, and defendant insisted that this use was made of it only because the land south of the cemetery was all open, and the part along the fence was the higher and

better pathway in muddy times. In the summer of 1884, or between that time and the commencement of this suit, the city had put in cinders and laid a brick walk on the south side of the street, since which time passage over this strip has been almost entirely discontinued.

It is said it was "left for a sidewalk;" that the street was graded up and the gutter cut "with reference to" that use of it. But we apprehend the city could not acquire actual possession of it by leaving it for any purpose, or by any dealing with other land with whatever reference to this. And we think that upon all the oral testimony on the subject the jury might well have believed that the city never did any work upon it, and that under the conditions shown, the use made of it as a passage way would have been just the same if there had been no street nor any pretense of one including it.

Besides the oral evidence, however, appellee was permitted, over objection, to introduce certain maps and plats in connection with the testimony of surveyors, to prove that according to the recorded and accepted plat of the city the north line of Lincoln street along the cemetery grounds was the half section line, which was also the south boundary of those grounds, and that the gutter spoken of was on that line.

From these it would appear that J. E. McClan formerly owned the land immediately west, and extending south, and also that immediately south of the cemetery; that his second addition to Bloomington was laid out in 1858, on the land west and extending south, with Lincoln street fifty feet in width, and having its north line north of the half section line; that in 1869 he laid out his third addition on the land immediately south of the cemetery, through which Lincoln street was continued east, of the same width, but with its north line coincident with the half section line, thus making a jog at the southwest corner of these grounds; and that the gutter mentioned is on that line.

The admission of this evidence and the instruction given to the jury in reference to it are the principal errors here alleged.

In an action of trespass *quare clausum fregit* or of forcible entry and detainer, to which this is likened, the question of title, as such, is not involved, but only that of possession.

Where the land is entirely vacant at the time of the alleged trespass or forcible entry, either party may introduce his title papers, because in such case title draws to it a constructive possession; and so also where it is actually occupied in part, the party so occupying may introduce them, because in such case they fix by conclusive presumption the extent of his actual possession, which in either case is sufficient for all the purposes of the action. But where the plaintiff rests his claim of right solely upon actual possession, it will be established only to the extent of such possession shown, without the aid of presumption from title; and therefore the introduction of his title papers by the defendant would be useless and improper. If there is no evidence tending to show it, there is nothing for him to overcome. If there is any, his title papers —serving in any case to show only constructive possession, or by presumption the extent of his actual possession—would have no tendency to overcome it; for there can be no constructive, or presumptively actual possession where there is in fact actual possession. All this is too well settled and known to require the citation of any authority.

But it will be observed that in this case the defendant did not introduce his own title papers. It was conceded on the one hand that the cemetery association owned the land next north of the street, wherever the dividing line might be, and on the other that the street included whatever was actually occupied as such without regard to paper title. The question made was not one of title, or of constructive or presumptively actual possession, but of the location and extent of what was in fact actually occupied as a street.

It is to be further observed that the case is somewhat peculiar if not exceptional. As already stated, the actual possession to be proved by the appellant was of a particular and limited kind, or for a particular and limited purpose, as a street. This might be shown, not only as in other cases by any work done on the land by the city, but also, as not in others, by the mere passage over it of those who, as between these parties, were third persons, without explanation; and although evidence of the latter kind might be weak from the

infrequency of such passages or from the uncertainty whether the passers so used it as of public right or only because it was open, convenient and unforbidden ground, it would still be admissible for what the jury might consider it worth, and would be hard to explain. Being unnamed, it would be impossible for the defendant to produce all such persons and show by them directly how they regarded and used it.

He must, therefore, allow the fact to go without explanation or resort to other evidence for that purpose. Any circumstance which of itself or in connection with others in evidence would tend to show they did not consider it a street or use it as of public right, would be competent.

Then if it appeared that until the street was improved as at the commencement of this suit, all the land south of the cemetery fence was open and passed over by all who saw fit; that the part next to the fence was naturally better adapted to such use than the other; that the city had worked up to and including the north gutter, but no further, although there was no material obstacle to prevent, and had laid a brick sidewalk south of the other, it seems to us the fact that the north gutter was the boundary in that direction of the street as platted, would tend to characterize the use shown to have been made of the strip in question and rebut the effect of it as evidence that the strip was actually occupied as part of the street. It would more fully and clearly expose the situation with reference to this question, and yet without introducing the element of title; for its effect would be the same if the city owned the land, since the complaint here is not for trespass upon its land, but for excavating and obstructing its street. Having in fact a title of record, the city should not be allowed, by wilfully ignoring it, to deprive the defendant of the benefit of the evidence of its location and limits as fixed by its own deed. These would throw some light upon the character of the use made by individuals of adjoining open land.

The jury were fully advised by instructions on both sides that title was not involved and its determination should not influence their verdict; that the plats were to be considered only as bearing, in connection with the other evidence, upon

the extent or limit of the city's actual possession for the purposes of a street. This issue has been twice found for the appellee, and we see no such error in the record as would require a reversal of the judgment. It will be affirmed.

*Judgment affirmed.*